## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SADRA POURSHAKOURI,  )
HOSSEIN POURSHAKOURI,  )
)
      **Plaintiffs,**  )
)    **Civil Case No. 20-00402 (RJL)**
      **v.**  )
)
MIKE POMPEO, et al.,  )
)
      **Defendants.**  )
)

## MEMORANDUM OPINION
(August  9 , 2021) [Dkt. #7, #12]

Plaintiffs Sadra and Hossein Pourshakouri ("Sadra" and "Hossein" individually or,

collectively, "plaintiffs") bring this action against numerous federal officials

("defendants"), seeking to compel the U.S. Government ("Government") to adjudicate

Hossein's immigrant visa application. *See* Pls.' Pet. for Writ of Mandamus and Compl.

for Declaratory Relief ("Compl.") [Dkt. #1].  Plaintiffs allege the failure to issue a final

decision on Hossein's application after it has been pending for several years constitutes

an "unreasonable delay" warranting relief under the Administrative Procedure Act

("APA"), 5 U.S.C. § 701, *et seq.*, and the Mandamus Act, 18 U.S.C. § 1361.  Presently

before the Court are defendants' Motion to Dismiss ("Defs.' Mot.") [Dkt. #7] and

plaintiffs' Cross-Motion for Summary Judgment ("Pls.' Mot.") [Dkt. #12].  Because I

agree with defendants that, at this point in time, plaintiffs have failed to state an

unreasonable delay claim, defendants' Motion to Dismiss is GRANTED and plaintiffs'

Cross-Motion for Summary Judgment is DENIED.

## BACKGROUND

Plaintiffs in this case are father and son.  Sadra is a U.S. citizen currently residing in the United States.  Compl. ¶¶ 24, 60.  Hossein, Sadra's father, is an Iranian national residing in Iran.  *Id.* ¶¶ 25, 61.  Hossein is eighty-three years old and currently lives alone.  *Id.* ¶¶ 61, 77.  In order to reunite with Sadra and other family members living in the United States and Canada, plaintiffs began the immigration process to relocate Hossein to the United States in 2013.  *Id.* ¶ 62.

Foreign relatives of U.S. citizens seeking to immigrate to the United States must go through a multi-step process governed by the Immigration and Nationality Act ("INA").  That process begins with the filing of a Form I-130 petition with U.S. Customs and Immigration Services.  *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b).  Sadra filed a Form I-130 petition on Hossein's behalf, which was approved on May 17, 2013.  Compl. ¶ 62.

The next step in the process requires the foreign relative to complete Form DS-260, Electronic Application for Immigrant Visa and Alien Registration.  *See* 22 C.F.R. § 42.67.  In conjunction with completing the Form DS-260, the relative must pay an application fee, furnish fingerprints, and participate in an interview with a consular officer at a U.S. Embassy or consulate abroad.  *See id.* § 42.67(a)(1), (a)(3), (c).  On or around April 14, 2014, plaintiffs paid the necessary fee and submitted Hossein's

application to the U.S. Embassy in Abu Dhabi (the "Embassy").  Compl. ¶ 63.  On April

25, 2015,[1] a consular officer with the Embassy interviewed Hossein.  *See id*. ¶ 64.

Shortly after the interview, on April 28, 2015, plaintiffs were informed that

Hossein's application was temporarily refused under Section 221(g) of the INA, 8 U.S.C.

§ 1201(g), and would require further administrative processing.  *See id*.; Pls.' Mot. at 2.

On December 20, 2016, following plaintiffs' recruitment of then-Senator Barbara

Boxer's office to inquire as to the status of Hossein's application, the Embassy stated that

the "administrative processing" of Hossein's application remained ongoing.

Compl. ¶ 66.

On September 24, 2017, while plaintiffs were still waiting to hear from the

Embassy, President Trump signed Presidential Proclamation 9645 ("Proclamation

9645"), which, among other things, established additional immigration restrictions

affecting Hossein's application.[2]  *See* 82 Fed. Reg. 45,161 (Sept. 24, 2017).  As

particularly relevant here, Proclamation 9645 barred foreign nationals from Iran from

entering the United States.  *Id.* at 45,163.  This upended Hossein's immigration

application.  But it did not entirely dash plaintiffs' hopes, for Proclamation 9645 provided

that "consular officer[s] . . . may, in their discretion, grant waivers on a case-by-case

basis to permit the entry" of otherwise excluded foreign nationals.  *Id.* at 45,168.  Thus,

in the wake of Proclamation 9645, Hossein's path to immigrate to the United States

---

[1]  There is some confusion in the record as to the precise date of Hossein's interview, but plaintiffs
concede the April 15, 2015 date is correct.  *See* Pls.' Mot. at 2.
[2]  Although initially challenged, Proclamation 9645's constitutionality was upheld by the Supreme Court
in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018).

required him to obtain a waiver under the Proclamation.  To qualify for such a waiver, Hossein was required to show that (1) denying entry "would cause the foreign national undue hardship;" (2) "entry would be in the national interest;" and (3) entry "would not pose a threat to the national security or public safety."  *Id*.

In or around December 2017, shortly after Proclamation 9645 took effect, Sadra received an email requesting additional documents and information supporting Hossein's application.  *See* Compl. ¶ 73; *see also* Decl. of Chloe Dybdahl [Dkt. #7-1] ¶ 6.  Plaintiffs allege that around this time "Sadra began to speculate and hope that this may be a sign that his father . . . was being considered for a waiver."  Compl. ¶ 73. This proved true. As the Consular Consolidated Database of the U.S. Department of State ("State Department") reflects, on December 26, 2017, Hossein's application was refused under Proclamation 9645 and the Government began considering whether Hossein qualified for a waiver.  *See* Decl. of Chloe Dybdahl ¶ 6.

Defendants concede that the consular officer handling Hossein's application made a "preliminary determination" that the first two prongs of the waiver requirement— personal hardship and national interest—were met in Hossein's case.  Decl. of Chloe Dybdahl ¶ 7.  Only the third prong—an assessment of whether Hossein's entry "pose[d] a threat to the national security or public safety," 82 Fed. Reg. 45,168—remained outstanding during the pendency of Hossein's consideration for a waiver under Proclamation 9645.

To make this national security determination, the Government must engage in

"interagency review," which historically has been described as an "intensive" process. Compl. ¶¶ 54–55; *see also* Decl. of Chloe Dybdahl ¶ 7.  At no point during the pendency of Hossein's application did defendants provide a timeline for completing this review. Instead, the Government consistently asserted "[i]t is not possible to predict how long it will take to complete the security assessments or to further adjudicate the waiver request."  Decl. of Chloe Dybdahl ¶ 9.  In the meantime, Hossein's visa application remained refused, and he remained in Iran, separated from his family in the United States.

Plaintiffs allege that despite numerous inquiries, they received "no useful information" regarding the progress of Hossein's application beyond the fact that it was "still undergoing administrative processing."  Compl. ¶ 99.  Thus, on February 11, 2020, 26 months after Hossein began to be considered for a waiver under Proclamation 9645, plaintiffs filed the instant Complaint alleging unreasonable delay in the adjudication of Hossein's visa and waiver application.  *See generally* Compl.

On April 13, 2020, defendants moved to dismiss under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants asserted that to the extent plaintiffs sought an adjudication of Hossein's visa application—as distinct from his waiver application—the Court lacks jurisdiction because that claim is moot, and, in any event, barred by the doctrine of consular nonreviewability.  *See* Defs.' Mot. at 6–9, 15–17; *see also* Defs.' Reply in Support of Defs.' Mot. for Summ. J. ("Defs.' Reply") [Dkt. #13].  Defendants further argued that plaintiffs' Complaint is unreviewable under

the APA, and, in the alternative, that it fails to state a claim of unreasonable delay. Defs.'

Mot. at 9–15. Plaintiffs countered that their claims are reviewable under the APA and the

present record entitles them to summary judgment on the unreasonable delay claim,

warranting declaratory and injunctive relief in the form of an order directing defendants

to adjudicate Hossein's waiver application within twenty-one days. *See* Pls.' Mot. at 16–

26. The parties' motions are now fully briefed and remain pending before the Court.

In the intervening time, however, a change in Presidential Administrations

occurred, erecting yet another complication with respect to Hossein's visa application.

As relevant here, on January 20, 2021, newly inaugurated President Biden issued

Presidential Proclamation 10141 ("Proclamation 10141"), which *revoked* Proclamation

9645. 86 Fed. Reg. 7,005 (Jan. 20, 2021). Taking into account that applicants such as

Hossein may be caught in the regulatory lurch, Proclamation 10141 required the

Secretary of State to provide to the President "[a] proposal to ensure that individuals

whose immigrant visa applications were denied on the basis of . . . Proclamation 9645 . . .

may have their applications reconsidered" and a "plan for expeditiously adjudicating" the

"pending visa applications" of applicants who were "being considered for a waiver . . .

under Proclamation 9645" at the time of its revocation. *Id*. at 7,006.

In response to Proclamation 10141's directives, the State Department published

guidance on March 10, 2021. The Department indicated that while several groups of

applicants would have to reapply for visas, immigration visa applicants similar to

Hossein "who were refused due to . . . [Proclamation 9645] . . . and whose eligibility for a

waiver was still being evaluated as of January 20, 2021, will continue to have their

6

applications processed."   U.S. DEP'T OF STATE – BUREAU OF CONSULAR AFFAIRS,

*Rescission of Presidential Proclamations 9645 and 9983*,

https://travel.state.gov/content/travel/en/News/visas-news/rescission-of-presidential-

proclamations-9645-and-9983.html (updated March 10, 2021).

In the wake of these developments, I ordered supplemental briefing regarding the

status of plaintiffs' claims.  Order dated March 17, 2021 [Dkt. #14].  In their

supplemental submission, defendants confirmed that consular officials at the Embassy

have currently "resumed processing . . . Plaintiff Hossein's visa application."

Supplemental Mot. to Dismiss ("Defs.' Supp. Mot.") [Dkt. #15] at 4; Declaration of

Courtney Paterson ("Paterson Decl.") [Dkt. #15-1] ¶ 10.  To this end, a consular officer

contacted Hossein on March 30, 2021 requesting updated materials.  Paterson Decl. ¶ 10.

Defendants also reiterated their previous arguments for dismissal, asserting that

the Court lacks jurisdiction, that plaintiffs' claims are barred by the doctrine of consular

nonreviewability, and that plaintiffs' claims are moot to the extent they seek a decision

on Hossein's visa application.  Defs.' Supp. Mot. at 2.  They also added the additional

argument that Proclamation 10141 renders the present dispute moot.  *Id.* at 4.

Plaintiffs concede that in light of the revocation of Proclamation 9645, "the

necessity for adjudicating a waiver may be moot."  *See* Pls.' Supplemental Mem. in Opp.

to Defs.' Mot. to Dismiss and in Support of Pls.' Cross-Mot. for Summ. J. ("Pls.' Supp.

Mot.") [Dkt. #16] at 1, 3.  But plaintiffs emphasize that their Complaint continues to

present a live controversy in light of the ongoing processing of Hossein's visa

application.  *Id.* at 3 ("Plaintiffs reiterate that they are seeking redress for agency inaction

that predated [Proclamation 9645], including adjudication of the *visa application itself*.").

## STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Where a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (quoting *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009)). Under Rule 12(b)(1), plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction. *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). The Court must accept as true all well pleaded factual allegations and draw all reasonable inferences in plaintiffs' favor. *Taylor*, 821 F. Supp. 2d at 372. But "the Court may give the plaintiff's factual allegations closer scrutiny" than it would in assessing a motion under Rule 12(b)(6). *Logan v. Dep't of Veteran Affairs*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6)

In analyzing a motion to dismiss under Rule 12(b)(6), the Court similarly accepts the factual allegations in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). That is, the complaint must contain sufficient factual allegations that, if

accepted as true, state a claim to relief that "is plausible on its face." *Id.* at 570.

Plaintiffs' entitlement to relief must rise above mere speculation. *Id.* at 555.

### C. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

where "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving

party bears the initial burden of demonstrating "the absence of a fact or facts necessary

for one or more essential elements of each cause of action." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  If the moving party satisfies this burden, the nonmoving party

must then identify specific facts establishing a dispute as to material facts to defeat the

motion. *See id.*

### ANALYSIS

### A. Subject-Matter Jurisdiction

Defendants argue the Court lacks subject-matter jurisdiction (1) because the

doctrine of consular nonreviewability shields defendants' conduct from judicial review

and (2) because plaintiffs' claims are moot.  Defs.' Mot. at 6–9, 15–17.  Unfortunately for

defendants, I disagree on both counts.  How so?

### 1. Consular Nonreviewability

Under the doctrine of consular nonreviewability, "a consular official's decision to

issue or withhold a visa is not subject to judicial review, at least unless Congress says

otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162–63 (D.C. Cir. 1999).  This

doctrine recognizes that Congress has empowered consular officers with the exclusive

authority to adjudicate visa applications when made overseas. *See* 8 U.S.C. §§ 1104(a),

1201(a), (g); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (noting the Supreme Court "ha[s]

long recognized the power to expel or exclude aliens as a fundamental sovereign attribute

exercised by the Government's political departments largely immune from judicial

control"). The doctrine, however, is inapplicable "where the government has not made a

final visa decision." *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017) (collecting

cases).

Defendants contend that consular nonreviewability precludes this Court from

reviewing plaintiffs' claims to the extent they challenge the consular officer's refusal of

Hossein's visa application. Defs.' Mot. at 6–7; Defs.' Supp. Mot. at 12. To assess this

claim, I must determine whether a final decision was ever issued with respect to

Hossein's application.[3]

Prior to the revocation of Proclamation 9645, courts in this district disagreed over

whether an initial denial under the Proclamation pending a decision on the applicant's

eligibility for a waiver constituted a final decision sufficient to invoke consular

nonreviewability. *Compare Zandieh v. Pompeo*, Civ. No. 20-919, 2020 WL 4346915, at

*3 (D.D.C. July 29, 2020) ("[W]here a plaintiff's visa application has been refused, but

he remains under consideration for a waiver from the same Presidential Proclamation, the

---

[3] As defendants assert, plaintiffs could not seek judicial review of a final decision by a consular officer to
refuse Hossein a visa. *See Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) ("The
Government is correct that this Court is barred from reviewing the consular officer's decision to deny
[plaintiff's] visa application . . . ."); *see also Bagherian v. Pompeo*, Civ. No. 19-1049, 2020 WL 674778,
at *3 (D.D.C. Feb. 11, 2020) ("The government contends that the doctrine [of consular nonreviewability]
bars this Court from reviewing the consular officer's decision . . . to refuse [plaintiff's] visa application.
True enough.").

[visa] decision is not final and consular nonreviewability is thus inapplicable." (cleaned

up)) *with Joorabi v Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020) ("[T]he doctrine of

consular nonreviewability prevents this Court from reviewing the government's denial of

the underlying visa applications," even when "waiver applications are still in

'administrative processing.'").

    In the wake of Proclamation 9645's revocation, however, strong evidence supports

the conclusion that initial denials under Proclamation 9645 are insufficient to warrant the

application of consular nonreviewability.  The subsequent Presidential directive,

Proclamation 10141, refers to individuals "who were being considered for a waiver of

restrictions under Proclamation 9645," as having "*pending* visa applications."  86 Fed.

Reg. 7,006.  Indeed, Proclamation 10141 differentiates this group from applicants "whose

immigrant visa applications *were denied* on the basis of the suspension and restriction on

entry imposed by Proclamation 9645," suggesting that while the latter category had

received final action on their visa applications, the former had not.  *See id.*

    The State Department reiterated this distinction in its subsequent guidance.  There,

the State Department distinguished immigration visa "applicants . . . whose eligibility for

a waiver was still being evaluated as of [the date of Proclamation 10141]" from those

who "were determined not to qualify for a waiver before [the date of Proclamation

10141]."  U.S. DEP'T OF STATE – BUREAU OF CONSULAR AFFAIRS, *Rescission of

Presidential Proclamations 9645 and 9983*,

https://travel.state.gov/content/travel/en/News/visas-news/rescission-of-presidential-

proclamations-9645-and-9983.html (updated March 10, 2021).  The latter group of

applicants were required to refile applications, while the former group, which includes Hossein, were told they would "continue to have their applications processed," without additional action on their behalf. *Id*. These statements strongly suggest that the Executive Branch and defendant State Department view those in Hossein's position as maintaining active, pending visa applications, which have not yet received a final adjudication.

Even defendants' submissions in the present litigation confirm this understanding. Defendants consistently refer to Hossein's visa application as in the ongoing process of being adjudicated, not as an application that has already been finally resolved. *See* Defs.' Supp. Mot. at 4 (stating that "consular officials at the U.S. Embassy in Abu Dhabi [have] *resumed* processing [] Plaintiff Hossein's visa application" (emphasis added)); *id*. at 11 ("[C]onsular officials [] have already contacted Plaintiff Hossein requesting updated materials to support the *resumption of processing [] his case*."). Accordingly, it is evident that no "final decision," *P.K.*, 302 F. Supp. 3d at 11, has occurred with respect to Hossein's visa application, and therefore the doctrine of consular nonreviewability does not bar his unreasonable delay claim.[4]

### 2. Mootness

---

[4]  Prior to the revocation of Proclamation 9645, numerous courts in this district considered the justiciability of unreasonable delay claims under the Proclamation. The overwhelming consensus was that the doctrine of consular nonreviewability did not bar such claims. *See, e.g., Mirbaha v. Pompeo*, Civ. No. 20-299, 2021 WL 184393, at *5 (D.D.C. Jan. 19, 2021) (Kelly, J.); *Ashtari v. Pompeo*, Civ. No. 19-3797, 2020 WL 6262093, at *2 (D.D.C. Oct. 23, 2020) (Mehta, J.); *Zandieh*, 2020 WL 4346915, at *3 (Boasberg, J.); *Sarlak v. Pompeo*, Civ. No. 20-35, 2020 WL 3082018, at *3–4 (D.D.C. June 10, 2020) (Howell, C.J.); *Bagherian*, 2020 WL 674778, at *2–4 (Bates, J.); *Didban*, 435 F. Supp. 3d at 174 (Cooper, J.). These decisions support the conclusion here that until a visa application has been fully processed and a final decision has been made, the doctrine of consular nonreviewability will not preclude unreasonable delay claims brought to achieve adjudication of the application.

The mootness doctrine bars federal courts from deciding issues where "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701. A case is moot where "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). Defendants argue plaintiffs' claims are moot under two different theories. First, they contend that Hossein's visa application "was already denied," which, if true, would render this Court's decision on any unreasonable delay a purely hypothetical and advisory exercise. *See* Defs.' Mot. at 15–17. Second, defendants argue plaintiffs' claims are unjusticiable because "President Biden's rescission of [Proclamation 9645] has entirely mooted any challenge to either that Proclamation or its waiver provisions." *See* Defs.' Supp. Mot. at 10. Unfortunately for defendants, I disagree with both contentions.

Defendants' first argument suffers from the same flaw as its argument in favor of the doctrine of consular nonreviewability, and I reject it for similar reasons. Contrary to defendants' statement that "plaintiffs' visa application was already denied," it is evident from Proclamation 10141, the State Department's recent guidance, and defendants' submissions to this Court that Hossein's application continues to be under active consideration. *See* Defs.' Supp. Mot. at 11; Paterson Decl. ¶ 10. Accordingly, plaintiffs' claim of unreasonable delay with respect to this process can hardly be considered moot.

Defendants' second argument fares no better. Defendants' contend that plaintiffs' claims are moot because the repeal of Proclamation 9645 moots any challenge to that Proclamation or its waiver provisions. *See* Defs.' Supp. Mot. at 10. This misconstrues the

13

nature of plaintiffs' claims.  In the Complaint, plaintiffs seek not only an adjudication of Hossein's eligibility for a waiver under Proclamation 9645, but also, and more fundamentally, an adjudication of his application for an immigration visa as a whole.  *See* Compl. 46–47.  Despite the shifting regulatory framework, I agree with plaintiffs that the alleged unreasonable delay at the heart of this case is not limited to Proclamation 9645 or the waiver provisions thereunder.  Instead, it goes to Hossein's application for an immigrant visa, which the Government has yet to either approve or deny.  Accordingly, to the extent plaintiffs' claims seek a timely adjudication of Hossein's visa application, they are not moot.  *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) (holding a claim is not moot merely because the "primary and principal relief sought" is no longer available).

### B.  APA Claim

Turning to the merits, plaintiffs assert the Government's delay in adjudicating Hossein's visa application is unreasonable in violation of the APA, which requires agencies to act "within a reasonable time," 5 U.S.C. § 555(b), and authorizes courts to compel action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).  *See* Compl. ¶¶ 137–49.

As a threshold matter, defendants contend the Court lacks the ability to review this claim under the APA.  This argument rests on several interrelated assertions.[5]

---

[5]  As other courts in this district have commented, defendants' precise reasoning supporting its argument that unreasonable delay claims regarding waiver applications are unreviewable under the APA is difficult to discern. *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 42 (D.D.C. 2020) (noting "defendants' arguments are at times difficult to parse"); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 112 (D.D.C. 2020)

Defendants initially claim "the consular nonreviewability doctrine poses a limitation on judicial review that renders the APA inapplicable." Defs.' Mot. at 9–10.  This argument is duplicative of defendants' jurisdictional argument based on the doctrine of consular nonreviewability, and the Court rejects it for the same reasons.  *See, e.g., Zandieh*, 2020 WL 4346915, at \*3–4 (holding doctrine of consular nonreviewability did not bar review of the merits of an unreasonable delay claim under the APA); *Sarlak v. Pompeo*, Civ. No. 20-35, 2020 WL 3082018, at \*3–4 (D.D.C. June 10, 2020) (same).

Next, defendants assert that plaintiffs' claim is unreviewable because the APA exempts "agency action [that] is committed to agency discretion by law" from judicial review.  Defs.' Mot. at 10 (citing 5 U.S.C. § 701).  Defendants frame this argument around the waiver program under Proclamation 9645, arguing "[t]he processing of a waiver application is committed entirely to agency discretion." *Id*. at 12.  Whatever force this argument may have had with respect to waivers under Proclamation 9645,[6] it appears weaker when applied to Hossein's visa application.  *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 293 (D.D.C. 2016) ("Simply put, the APA imposes a duty on Defendants to act

---

(commenting that it was "difficult to separate [defendants'] arguments in the briefing").
[6]   While Proclamation 9645 was in effect, courts in this district split over this issue. *Compare Joorabi*, 464 F. Supp. 3d at 101 (finding Proclamation 9645 "commits the waiver process to the agency's discretion") *and Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 140 (D.D.C. 2020) ("[T]he government makes a strong argument that the waiver process is unreviewable") *with Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 115–21 (D.D.C. 2020) (holding the Government has a nondiscretionary duty to adjudicate each waiver application, rendering the committed to agency discretion exception inapplicable); *and Ashtari*, 2020 WL 6262093, at \*3–4 (same); *and Thomas v. Pompeo*, 438 F. Supp. 3d 35, 42–44 (D.D.C. 2020) (same).  Indeed, in light of the "complex legal question" that the issue presented, some courts presumed reviewability without directly addressing the issue. *See Ghadami v. U.S. Dep't of Homeland Security*, Civ. No. 19-00397, 2020 WL 1308376, at \*7 (D.D.C. Mar. 19, 2020) (collecting cases).

within a 'reasonable' time on Plaintiffs' [immigrant visa] applications"); *see also* 22

C.F.R. § 42.81 ("When a visa application has been properly completed and executed

before a consular officer in accordance with the provisions of the INA . . . the consular

officer must issue the visa, refuse the visa . . . or . . . discontinue granting the visa.").

     In any event, I need not resolve this issue because I'm satisfied the delay here is

"not unreasonable," and will thus follow the lead of other courts in this district and

proceed by assuming, without deciding, that plaintiffs' unreasonable delay claim is

reviewable under the APA.[7]  *See Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C.

2020); *Ghadami v. U.S. Dep't of Homeland Security*, Civ. No. 19-00397, 2020 WL

1308376, at *7 (D.D.C. Mar. 19, 2020); *see also Zandieh*, 2020 WL 4346915, at *4;

*Sarlak*, 2020 WL 3082018, at *4.

     To assess whether agency action is unreasonably delayed, the Court must consider

six factors outlined by our Circuit Court:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on

---

[7] It is appropriate to assume reviewability in this instance because even if plaintiffs' claims are committed to agency discretion, and therefore not reviewable under the APA, this does not undermine the Court's Article III jurisdiction. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[A] complaint seeking review of agency action 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1).").

agency activities of a higher priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Res. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).[8]

The first factor, which is the most important,[9] weighs in defendants' favor. Although plaintiffs began the visa application process in 2013, the Court must take into account the numerous changes in applicable regulations in calculating the relevant timeframe. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."). In total, plaintiffs waited approximately 32 months between the initial refusal of Hossein's application and when Proclamation 9645 took effect, a further 37 months during which the Government reviewed Hossein's eligibility for a waiver in light of national security concerns, and an additional 7 months since the revocation of Proclamation 9645. Following the approach of other courts in this district, I'll examine whether the period since Hossein began to be considered for a waiver under

---

[8] Although some courts have found that that engaging in a *TRAC* analysis at the motion to dismiss stage is "not appropriate" because such an inquiry is "premature," *Moghaddam*, 424 F. Supp. 3d at 117, the majority of courts to consider unreasonable delay claims in the immigration context have applied the *TRAC* factors at this stage in the litigation to assess whether plaintiffs have stated a claim under Rule 12(b)(6). *See, e.g., Sarlak*, 2020 WL 3082018, at *5 (collecting cases).

[9] *See Sarlak*, 2020 WL 308 2018, at *5 (citing *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) ("The first and most important factor is that the time agencies take to make decisions must be governed by a rule of reason.")).

Proclamation 9645—or 44 months—constitutes an unreasonable delay.  *See Zandieh*, 2020 WL 4346915, at *4 (holding the clock starts on the date waiver-eligibility review began); *Mirbaha v. Pompeo*, Civ. No. 20-299, 2021 WL 184393, at *5 (D.D.C. Jan. 19, 2021); *Sarlak*, 2020 WL 3082018, at *1, 5 (same); *Bagherian v. Pompeo*, Civ. No. 19-1049, 2020 WL 674778, at *2, *5 (D.D.C. Feb. 11, 2020).

While certainly substantial, the reasonableness of this period "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful."  *Ghadami*, 2020 WL 1308376, at *8 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).  Instead, the rule of reason requires due consideration of "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1094.

These considerations militate in defendants' favor.  The assessment of national security concerns, which took up a significant period of the delay, is a complex process that requires interagency review.  *See* Decl. of Chloe Dybdahl ¶ 7; *see also Didban*, 435 F. Supp. 3d at 177 (noting the "significant national security interests involved in assessing waiver applications").  Moreover, the ordinary challenges associated with making a public-safety or national-security assessment are exacerbated in this case by the fact that Iran, as one of the countries subject to the Proclamation, was found by the Department of Homeland Security and the State Department to have "inadequate . . . identity-management protocols, information-sharing practices, and risk factors."  82 Fed. Reg. 45,163.

The significance of the immigration decision, which is ordinarily substantial, was similarly heightened in this case by the fact that the Department of Homeland Security and State Department also concluded—after analyzing "terrorism-related and public-safety risks associated with foreign nationals" from Iran—that the restrictions in the Proclamation were necessary.  *Id*.; *see also Zandieh*, 2020 WL 4346915, at *6 (holding the Government's interest "in ensuring careful national security vetting outweigh Plaintiffs' interest in an immediate adjudication of the waiver").  While these considerations do not provide the Government a blank check to delay a decision on Hossein's visa indefinitely, they justify finding the delay reasonable in this case.

Moreover, courts in this district have found comparable periods reasonable.  *See, e.g., Zandieh*, 2020 WL 4346915, at *5 (Boasberg, J.) (granting motion to dismiss unreasonable delay claim based on a 29-month delay); *Mirbaha*, 2021 WL 184393, at *5 (Kelly, J.) (same for a 27-month delay); *Ghadami*, 2020 WL 1308376, at *8, 11 (Jackson, J.) (same for a 25-month delay); *Bagherian*, 2020 WL 674778, at *5–6 (Bates, J.) (same for a 25-month delay).  While I recognize the delay here is slightly longer than in these other cases, this does not disturb my conclusion that the rule of reason considerations continue to favor the defendants.[10]  *See Yavari v. Pompeo*, Civ. No. 19-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that

---

[10] The Government's conduct in the last seven months bolsters this conclusion.  Since the revocation of Proclamation 9645, defendants have recognized the backlog of applications similarly situated to plaintiffs', developed guidance to address the problem, and reached out to plaintiffs requesting additional documents to assist in processing Hossein's application.  *See* 86 Fed. Reg. at 7,005–06; Paterson Decl. ¶ 10.

immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."); *see also Zandieh*, 2020 WL 4346915, at *6 (recognizing that "several of this district's courts have noted that delays between three to five years are often not unreasonable").

The second factor also favors defendants. As plaintiffs concede, no strict timeline governed the adjudication of waiver applications under Proclamation 9645. *See* Pls.' Mot. at 16 ("there is no strict timeframe set by the Proclamation or agency guidance for processing waivers"); *Didban*, 435 F. Supp. 3d at 176 ("Congress has supplied no timeline for processing waiver applications."). Nor do plaintiffs point toward any binding regulatory or statutory timeline for processing Hossein's visa application.[11] To the contrary, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017); *see also Zandieh*, 2020 WL 4346915, at *5 (finding second factor weighs in favor of defendants); *Sarlak*, 2020 WL 3082018, at *5 (same); *Ghadami*, 2020 WL 1308376, at *8 (same).

The third and fifth factors, by contrast, favor plaintiffs. The Complaint credibly

---

[11]   Plaintiffs cite 8 U.S.C. § 1571(b) as providing an indication of Congressional intent for an appropriate timeline. Pls. Mot. at 20. That provision provides, "[i]t is the sense of Congress that the processing of an immigrant benefit application should be completed no later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Unfortunately for plaintiffs, even to the extent this statement applies to plaintiffs' claims, courts have held that its 180-day deadline is merely precatory. *See Bemba v. Holder*, 930 F. Supp. 2d 1022, 1031 (E.D. Mo. 2013) ("Courts have held that this 'sense of Congress' is 'non-binding'."). Plaintiff also points to language from the State Department's Foreign Affairs Manual indicating a "policy" of processing all immediate relative visas within 30 days "of receipt of the necessary information from the applicant and the Department of Homeland Security." 9 FAM § 504.7-2. Not only is this similarly nonbinding, *see id.*, but it is unclear in the present case whether all the necessary information has, in fact, been received. *See* Paterson Decl. ¶ 10 (indicating the consular officer requested additional materials from Hossein as of March 30, 2021). In any event, the Court finds these provisions insufficient to displace the significant discretion that Congress provided to the federal agencies tasked with processing immigration applicants and vetting them to protect the national security.

alleges that the delay in adjudicating Hossein's visa affects plaintiffs' health and welfare, and significantly prejudices their well-being.  *See* Compl. ¶¶ 75–87.  Hossein is living alone at the advanced age of 83, separated indefinitely from his four children and many grandchildren.  Compl. ¶ 77.  Understandably, this separation exacts a considerable mental, financial, and emotional toll on plaintiffs.  *Id.* ¶¶ 78–86; *Ghadami*, 2020 WL 1308376, at *9.  Accordingly, plaintiffs' interests in receiving a timely decision are significant, and the Court urges the Government to act on Hossein's application with all appropriate haste.

The fourth factor, however, returns to defendants' column.  During the relevant time period, defendants have faced thousands of applicants similarly situated to Hossein. [12]  *See* Defs.' Mot. at 3; Defs.' Reply at 10 (stating 14,000 applicants were awaiting a national security determination in order to proceed with the adjudication of their waiver applications); *see also Zandieh*, 2020 WL 4346915, at *5 (recognizing 13,000 applicants were "undergoing waiver-eligibility review"); *Ghadami*, 2020 WL 1308376, at *9 (recognizing "at least 12,000 visa applicants" were undergoing waiver-eligibility review).  Whatever the precise number may currently be, it is evident that this backlog continues to present an administrative challenge regarding how best to allocate limited resources—a

---

[12]  Plaintiffs assert that defendants "have not established that there is a queue."  Pls.' Mot. at 22.  The State Department, however, releases monthly statistical reports regarding implementation of the Proclamation and the related Presidential Proclamation 9983.  The most recent available report states "for some" applications out of a population of 41,730, "it has been established that issuance of visas is in the national interest and that denial of visas would cause undue hardship.  These applications are likely to be issued visas, pursuant to waivers of P.P. 9645 or P.P. 9983, following completion of national security checks."  *See* Implementation of Presidential Proclamations (P.P.) 9645 and 9983: December 8, 2017 to November 30, 2020, at 3, available at https://travel.state.gov/content/dam/visas/presidentialproclamation/Presidential%20Proclamation%209645-November%202020.pdf.

problem the defendant agencies are best suited to handle.  *In re Barr Laboratories, Inc.*,

930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique—and authoritative—

position to . . . allocate its resources in the optimal way.").  As many courts have held,

judicial intervention is unwarranted where, as here, it would move plaintiffs to "the head

of the queue" and "move[] all others back one space," effectively "produc[ing] no net

gain."  *Id.* at 75; *Zandieh*, 2020 WL 4346915, at *6; *Sarlak*, 2020 WL 3082018, at *6;

*Bagherian*, 2020 WL 674778, at *6.  A fair appreciation of the agencies' competing

responsibilities militates against any judicial "reordering [of] agency priorities" at this

time.  *In re Barr*, 930 F.2d at 76; *see also Skalka*, 246 F. Supp. 3d at 153 ("Where the

agency action sought is one of many similar adjudications that the agency must complete,

the court should be even more cautious before intervening.").

     The sixth and final factor is neutral.  Plaintiffs allege defendants acted in "bad

faith."  Compl. ¶¶ 150–70.  But the main thrust of these accusations amounts to little

more than a recharacterization of plaintiffs' unreasonable delay claims.  *See, e.g.*, Compl.

¶ 162 ("Failing to issue a decision on Plaintiff Hossein's visa and waiver application, in

light of the imminent harm, is an act of bad faith on the part of Defendants.").  As such,

they support plaintiffs only minimally, if at all.  *See Zandieh*, 2020 WL 4346915, at *6

(finding the sixth *TRAC* factor neutral where allegations of Government impropriety were

"weak").  Moreover, on the other side, defendants have shown some "good faith effort in

addressing the delay"—a consideration which weighs against judicial intervention.  *See

Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105 (D.D.C. 2005).  As the Congressional

testimony and statistical reports cited by plaintiffs indicate, defendants have been

working on addressing the backlog of visa applications for some time.  Ex. A to Pls.'

Mot. at 3–4; Pls.' Mot. at 22 n.3.  And as the recent guidance issued by defendant State

Department confirms, that work continues today.  Accordingly, this factor is effectively

neutral, and, in any event, does not greatly influence the Court's analysis.

Ultimately, in considering the *TRAC* factors, I have concluded that plaintiffs fail to

state an unreasonable delay claim under the APA.  While plaintiffs' interests in a timely

adjudication of Hossein's visa application are substantial, the Government's interest in

rigorous vetting of prospective immigrants weighs heavily on the other side.  *See*

*Zandieh*, 2020 WL 4346915, at *6.  Although this calculus may change in the future as

delays lengthen, the wait Hossein has endured here is not unreasonable.  *See id.*

("[D]elays between three to five years are often not unreasonable"); *Yavari*, 2019 WL

6720995, at *8 ("District courts have generally found that immigration delays in excess

of five, six, seven years are unreasonable, while those between three to five years are

often not unreasonable."); *see also Sarlak*, 2020 WL 3082018, at *6; *Ghadami*, 2020 WL

1308376, at *8; *Bagherian*, 2020 WL 674778, at *5–6; *Didban*, 435 F. Supp. 3d at 176–

77.

### C. Mandamus Claim

Plaintiffs' mandamus claim similarly warrants dismissal because plaintiffs premise

their mandamus claim on the same unreasonable delay on which their APA claim rests.

Compl. ¶ 134.  The "standard by which a court reviews . . . agency inaction is the same

under both § 706(1) of the APA and the Mandamus Act . . . ."  *Skalka*, 246 F. Supp. 3d at

152.  In both situations, the courts look to whether the agency has unreasonably delayed

the action in question. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). Accordingly, having found that adjudication of Hossein's visa application was not unreasonably delayed under the APA, the Court must also reach the same conclusion under the Mandamus Act. *See Didban*, 435 F. Supp. 3d at 177.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), DENIES plaintiffs' Cross-Motion for Summary Judgment, and DISMISSES the action without prejudice for refiling at a substantially later date.  An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge